| AOC-105 Doc. Code: CI<br>Rev. 1-07<br>Page 1 of 1<br>Commonwealth of Kentucky<br>Court of Justice www.courts.ky.gov<br>CR 4.02; CR Official Form 1 | **CIVIL SUMMONS** | Case No. **19CI00997**<br>Court ☑ Circuit ☐ District<br>County Jefferson |

JEFFERSON CIRCUIT COURT
DIVISION THIRTEEN (13)

PLAINTIFF

ONA HULL

VS.

DEFENDANT

LINCOLN LIFE ASSURANCE    CO. OF BOSTON
PO BOX 7213
LONDON KY 40742

Service of Process Agent for Defendant:
ANY OFFICER OR AGENT

THE COMMONWEALTH OF KENTUCKY
TO THE ABOVE-NAMED DEFENDANT(S):

You are hereby notified a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf** within **20 days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached Complaint.

The name(s) and address(es) of the party or parties demanding relief against you are shown on the document delivered to you with this Summons.

Date: FEB 13 2019, 2____

DAVID L. NICHOLSON, CLERK

By: _____ D.C. Clerk

---

**Proof of Service**

This Summons was served by delivering a true copy and the Complaint (or other initiating document) to:

_____

this _____ day of _____, 2_____.

Served by: _____

_____ Title

---



EXHIBIT A

NO. **19CI00997**

JEFFERSON CIRCUIT COURT
DIVISION _____

JEFFERSON CIRCUIT COURT
DIVISION THIRTEEN (13)

| | |
|---|---|
| ONA HULL | ) |
| | ) |
| v. | ) |
| | ) COMPLAINT |
| | ) |
| LINCOLN NATIONAL LIFE | ) |
| INSURANCE CO. | ) |
| 8801 INDIANA HILLS DRIVE | ) |
| OMAHA, NE 68114-4066 | ) |
| | ) |
| SERVE: | ) |
| SECRETARY OF STATE | ) |
| | ) |
| -and- | ) |
| | ) |
| LIBERTY LIFE ASSURANCE CO. OF BOSTON | ) |
| PO BOX 7213 | ) |
| LONDON KY 40742 | ) |

SERVE:

ANY OFFICER OR AGENT

\*\*\* \*\*\* \*\*\*

Comes the Plaintiff, ONL HULL, by counsel, and for her cause of action against Defendant states as follows:

PARTIES AND VENUE

1. Plaintiff is a resident of Louisville, Jefferson County, Kentucky.

2. Defendant, Lincoln, (hereinafter "carrier" or "Defendant" or " Lincoln" ) is a corporation doing business in the Commonwealth of Kentucky. Defendant Liberty Life Assurance ("Liberty") is likewise a corporation doing business in the Commonwealth of Kentucky. Upon information and belief, and apparently, Lincoln and Liberty are co-administrators in this action as evidence by the attached "Denial Letter" dated Feb. 4, 2019. *See* "Exhibit 1".

# EXHIBIT A

3. This is an action brought by a participant to recover long term disability benefits ("LTD" respectively) due to her under the terms of an insurance plan governed by §502(e) of the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §1132(e), which is more specifically, a contract for disability insurance and wage replacement benefits.

4. This Court has jurisdiction pursuant to §502(e) of the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §1132(e).

## FACTS

5. Plaintiff was a full-time employee of Cotiviti, Inc. ("employer") for a sufficient time period so as to eligible for long term disability ("LTD") wage replacement benefits replacement coverage under the terms of an insurance contract identified as Claim #7844233.

6. As a full time employee, Plaintiff was eligible for, and was participating in the LTD disability plan ("plan") offered by employer.

7. At all times relevant to this Complaint, the Plan was administered by Defendants and at all relevant times Defendants remained the so called "plan administrator".

8. By virtue of Plaintiff's medical impairments, and according to medical personnel, it is apparent that Plaintiff is permanently and totally disabled.

9. During the appeal process Defendants compelled the Plaintiff to apply for Social Security Disability Benefits ("SSDI).

10. Plaintiff then applied for and was approved for LTD benefits and was paid for a short period. Subsequently, and for reasons that are medically mysterious, Defendants re-reviewed the file an opted to terminate further wag replacement benefits.

11. Plaintiff has thusly exhausted administrative remedies under the plan.

12. Defendants' in house medical review performed by the Defendants' "hired medical reviewer(s)", practitioner(s) of unknown qualifications, erroneously concluded that the Plaintiff was able to perform an occupation. The Defendants fail to offer a rational basis as to why it does not concur with a diagnosis of disability consistent with Plaintiff's treating physicians.

13. Defendants' in-house reviewing staff erroneously concluded that the Plaintiff was capable of

# EXHIBIT A

returning to work and to work full time, as he did before the onset of her disability. Furthermore, Defendants refused to consider all of the Plaintiff's medical ailments and combined effect on her to terminate benefits. Said action is in violation of Sixth Circuit jurisprudence.

14. Defendants' refusal to consider Plaintiff's combination of medical impairments, and the effect each has on the other, is error. The Claimant is entitled to have the combination of all impairments considered under the Plan. The Defendants so callously ignored substantive medical proof that they cannot now enjoy the, so-called, arbitrary and capricious standard of review despite plan language to the contrary, and the medical history should be reviewed *de novo*.

15. Defendants are legally unable to deny Plaintiff's benefits based on even its own medical and vocational findings.

16. Since Defendants compelled Plaintiff to apply for SSDI benefits it is bound by the decision of the SSA.

17. Any physician who has personally treated the Plaintiff has never questioned the permanency and totality of Plaintiff's disability.

18. Defendants' conclusions that Plaintiff is not totally disabled was arbitrary and capricious, based on faulty data, flies in the face of the longitudinal medical evidence from the treating sources, and was executed in violation of relevant provisions of the plan.

19. At all relevant times Defendants were acting under a conflict of interest as it was the entity which determined if the Plaintiff was disabled and the entity which is responsible for payment of LTD wage replacement benefits. Accordingly, the Plaintiff is entitled to discovery over and above that which is customarily permitted in cases litigated under the ERISA statute.

20. Since Plaintiff was awarded said SSDI benefits due to her medical condition. Defendants cannot ignored the finding of SSA without adequate explanation in its decision and thusly violated of sixth circuit jurisprudence. *Whitaker v. Lincoln Life and Accident Co.*, 404 F.3d 947 (6th Cir. 2005).

21. Due to Defendants' actions Plaintiff is entitled to discovery exceeding standard ERISA protocol.

## COUNT 1

### DENIAL IS IN VIOLATION OF ERISA STATUTE

# EXHIBIT A

22. Pursuant to the ERISA statute Plaintiff is entitled to long-term disability benefits under the Plan.

23. Defendant has wrongfully denied Plaintiff LTD benefits and has breached the terms of the Plan under the dictates of the ERISA statute.

24. Defendant's decision to deny Plaintiffs benefits and their claim handling have been arbitrary and capricious and is not supported by substantial evidence, and is tantamount to a breach of contract, violating Plaintiff's expectations pursuant to the contract of wage replacement insurance.

WHEREFORE the Plaintiff prays as follows:

1. For payment of disability benefits due to her, calculated from the date benefits were ceased until the present, with interest to the extent permitted by law;

2. For attorney's fees and expenses that Plaintiff has incurred for enforcing her contractual rights as well as her ERISA rights;

3. For any and all equitable relief Plaintiff is entitled to under common law contract theory, tort, or under ERISA, including Defendants' assistance in remedying any damage its termination of benefits has caused respecting Plaintiff's credit history;

4. For any other attorney fees and costs expended in connection with the unlawful denial of benefits;

5. For any and all relief to which Plaintiff may be entitled under any legal claim, whether it be pursuant to a contract claim, state based statutory claims, federal ERISA based claims, or other claims that may arise once discovery is complete.

Respectfully submitted,

_____
ROBERT A. FLORIO
1500 Story Ave
Louisville, KY 40206
Counsel for Plaintiff
502-587-0228

# EXHIBIT A

# EXHIBIT 1

EXHIBIT A



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-3840

December 13, 2018

Dana M. Taylor
Sullivan Law Office
1500 STORY AVE,
LOUISVILLE, KY 40205

RE:   Long Term Disability (LTD) Benefits
      Cotiviti, LLC
      Claim #: 7844235
      Claimant: Ona Hull

Dear Dana Taylor:

We reviewed Ms. Hull's appeal request for Long Term Disability ("LTD") benefits, and have maintained the decision to deny benefits.

### Initial Claim Decision

Ms. Hull submitted a claim for her absence from work as of September 22, 2017, as a result of post-traumatic stress disorder and cervical disc issues. LTD benefits were denied, as the evaluation concluded her reported disability was pre-existing as defined by the Policy.

The basis for the decision was outlined in a letter dated April 27, 2018. Ms. Hull was provided an opportunity to request an appeal review of the denial, stating the reasons why she felt that her claim should not have been denied, and submit additional information to support her claim. Specifically, Ms. Hull was advised to submit the following information: "medical documentation including but, not limited to, your treating physician(s) office notes, test/exam results, surgical procedures records, CT scan reports, consulting physician reports, pharmacy records, physical and occupational therapy notes, hospital records, and discharge summaries and future ongoing treatment plan from any and all treating physicians, which supports your inability to perform the essential duties of your occupation for which you may be capable of supports your continued disability from September 22, 2017 and beyond the date of this letter as well as satisfies the Pre-Existing review requirements. It is recommended that you provide evidence that the diagnosis stated above were not treated for during the period of October 1, 2016 through December 31, 2016. Additionally, it is recommended that you provide a copy of all of your medical records for the period of October 1, 2016 through December 31, 2016 from the following medical providers: Dr. Allen, Dr. Talley, and your medical insurance provider. You should also provide any additional information that you feel will support your claim"

EXHIBIT A

## Appeal

In your letter of appeal dated October 23, 2018 you indicated you were representing Ms. Hull on her appeal regarding her Long-Term Disability benefits. You asked for all future correspondence regarding this claim be sent to your office.

You stated you had a letter dated April 27, 2018 in which Ms. Hull was denied benefits. You stated this letter was your clients appeal to that denial. You confirmed there were no new medical records to submit and to refer to all documents contained in the case file as provided by Liberty.

You then provided a detailed argument for the appeal. You stated Liberty has impermissibly and wrongfully denied Ms. Hull her LTD benefits based on an unsupported and unrelated form completed by her primary care physician. You stated there is not a scintilla of evidence to suggest Ms. Hull was being treated for the alleged pre-existing conditions as defined by the policy. As a result, Liberty has abused its discretion in adjudicating this claim. Therefore, you stated Ms. Hull's claim should be approved and benefits retroactively paid.

## Appeal Evaluation

Based on a review of the documentation contained in Ms. Hull's claim file, her effective date of LTD coverage was January 1, 2017 and her reported disability began on September 22, 2017. Since her reported disability began within the first 12 months immediately after her effective date of coverage, Ms. Hull's claim is subject to the pre-existing condition investigation for the period of October 1, 2016 to December 31, 2016. This means if, during that period, Ms. Hull was diagnosed or received treatment, including undergoing diagnostic measures, being prescribed drugs and/or medicines, or receiving care or services by a physician, for the same condition or a condition which caused or contributed to the condition that led to her reported disability, then her reported disability is excluded from LTD benefit coverage.

During the initial claim evaluation, Ms. Hull's claim was reviewed by a member of our clinical service unit. The reviewer indicated Ms. Hull had been out of work since September, 2017 primarily due to depression, anxiety and post-traumatic stress disorder, for which she had been under the care of therapist Kathryn Hoover, as well as psychiatrist, Dr. Ben Schoenbachler. Ms. Hull had also sought treatment for physical complaints due to neck and back pain, rheumatoid arthritis, psoriatic arthritis flare ups, headaches and visual difficulties for which treatment for these conditions included physical therapy, chiropractic treatment, cervical epidural steroid injections, arthritis medication changes, oral pain and nerve pain medications and eye glass/contact lens changes.

The reviewer indicated additional notable comorbid conditions include an aneurysm in 2013 with residual cognitive dysfunction, high blood pressure, chronic obstructive pulmonary disorder, migraine headaches, gastrointestinal reflux, chronic joint pain and Raynaud's disease.

The claim was reviewed for the pre-existing investigation for the period of October 1, 2016 through December 31, 2016. Office visit notes dated October 10, 2016, October 12, 2016, and October 26, 2016 with Dr. Petrucci, Ms. Hull received chiropractic care for neck and back pain; treatment included spinal adjustments, mechanical traction and ultrasound. Office visit note dated October 16, 2016 with nurse, Twyla Henderson, Ms. Hull received Botox injections for facial line improvement. Office visit dated October 18, 2016 with Dr. Richard Hefner, Ms. Hull presented for follow up of

## EXHIBIT A

attention deficit hyperactivity disorder and hypothyroidism; additional diagnoses noted as being assessed at this visit include high blood pressure, hyperlipidemia, generalized anxiety disorder and psoriatic arthritis. Ms. Hull reported symptoms of daily panic attacks and anxiety, headaches, and nausea due to workplace issues; the attending physician also noted Ms. Hull was undergoing an outbreak of shingles. Treatment included a continuation of all current daily medications and follow up in 6 months. Family Medical Leave Act form completed on October 18, 2016 by Dr. Hefner, stated that Ms. Hull was unable to perform her job functions due to rheumatoid arthritis flares, depression, anxiety attacks, headaches, loss of focus or ability to concentrate, disruption of sleep cycle and exacerbation of post-traumatic stress disorder (PTSD); accommodation and rest were advised.

Office visit note dated December 13, 2016, with Dr. Mcnulty, Ms. Hull presented for a contact lens check and reported dry eyes. Exam notes poor vision on visual acuity and new contact lenses were ordered. There was also an October 11, 2016 lab test result on file, however there is no correlating office visit note on file for review. Pharmacy records note Ms. Hull was prescribed/filled Enbrel, Omeprazole, Adderall, levothyroxine, otezla, halobetasol, clonidine, as well as a hormonal therapy drug during the pre-existing investigation period.

The reviewer stated based the records on file, there is evidence of treatment for back and neck pain, anxiety, depression, PTSD, ADHD, visual difficulties, headaches, Botox injections, high cholesterol, GI reflux, hypothyroidism, shingles and psoriatic arthritis during the pre-ex time period.

During the review of Ms. Hull's appeal, her claim was reviewed by a consulting physician, board certified in internal medicine.

The reviewer indicated most of the records provided are from 2017 or earlier, with the most recent date when Ms. Hull was seen by a clinician, for which records were provided to the reviewer, being March 13, 2018. There are multiple medical and psychiatric disorders listed in the records including Post-Traumatic Stress Disorder, Attention Deficit Hyperactivity Disorder (ADHD), Subarachnoid hemorrhage (SAH) in 2013, chronic headache, Psoriasis and Psoriatic Arthritis, Degenerative Disk Disease of the cervical, thoracic and lumbar spine with chronic neck and back pain, Depression/Anxiety Disorder, hypothyroidism, allergic rhinitis, hypertension, hyperlipidemia, chronic obstructive pulmonary disease, acne, colon polyp and gastro esophageal reflux disease (GERD).

There are limited records provided that document care during the period in question. These records, however, document that Ms. Hull was seen on two occasions during this period in question by chiropractor Dr. Lido Petrucci, DC for neck and back pain on October 12, 2016 and October 26, 2016. The records further document that these chiropractic treatments continued beyond this period in question until December 20, 2017.

There are also pharmacy records that document that Ms. Hull filled prescriptions for the following medications during this period in question: include estradiol-norethindrone hormone (for post-menopausal state), Enbrel (for psoriatic arthritis), omeprazole (for GERD), Adderall (for ADHD), Otezla (for psoriatic arthritis), l-thyroxine (for hypothyroidism) and minocycline (for acne).

These records document that Ms. Hull was seen on two occasions during the pre-existing investigation period in question (October 1, 2016 – December 31, 2016) by chiropractor Dr. Lido

**EXHIBIT A**

Petrucci, DC for neck and back pain on October 12, 2016 and October 26, 2016. There are also pharmacy records that document that Ms. Hull filled prescriptions for the following medications during this period in question: estradiolnorethindrone hormone (for post-menopausal state), Enbrel (for psoriatic arthritis), omeprazole (for GERD), Adderall (for ADHD), Otezla (for psoriatic arthritis), l-thyroxine (for hypothyroidism) and minocycline (for acne).

Therefore, current diagnoses Ms. Hull has that, based on the records provided the reviewer, were not treated during this pre-existing investigation period include: Post-Traumatic Stress Disorder, Depression/Anxiety Disorder, allergic rhinitis, hypertension, hyperlipidemia and chronic obstructive pulmonary disease.

Based on the records provided to the reviewer, there is insufficient evidence to support impairment from September 22, 2017 to the present related to any of these medical conditions (allergic rhinitis, hypertension, hyperlipidemia or COPD). The specific role of the psychiatric disorders in this claimant's impairment is better addressed by a psychiatric reviewer.

Additionally, Ms. Hull's file was reviewed by an independent physician, board certified in psychiatry and neurology.

The reviewer indicated Ms. Hull meets criteria for PTSD and unspecified depressive disorder. She has had symptoms of PTSD since the early 90s and was given that diagnosis by Katherine Hoover, PhD, in July 2015, Richard Hefner, D.O., at least by October 18, 2016, and by Dr. Schoenbachler at least by August 23, 2016.

Her medical problems include psoriatic arthritis with chronic pain, degenerative disc disease of the cervical spine with chronic pain, Raynaud's disease, subarachnoid hemorrhage in 2013 with subsequent problems maintaining wakefulness and attention, visual changes secondary to subarachnoid hemorrhage, hypertension, hyperlipidemia, and hypothyroidism. She is on chronic immune suppression therapy with medication for psoriatic arthritis and this leads her to be vulnerable to infections. It is outside the scope of this reviewer's expertise to assess symptoms, impairments or limitations from these disorders. These were evaluated in the internal medicine review outlined above. The reviewer stated it is important to note that chronic medical problems and chronic pain can exacerbate psychiatric symptoms and can themselves be worsened when psychiatric symptoms are pronounced.

The medical record demonstrates that Ms. Hull has had symptoms of PTSD since the early 90s. She was given that diagnosis by Katherine Hoover, PhD, in July 2015; by Richard Hefner, D.O., at least by October 18, 2016; and by Dr. Schoenbachler at least by August 23, 2016. The medical record does not provide documentation that she received any treatment (counseling or treatment with psychiatric medications) between October 1, 2016 through December 31, 2016 for PTSD or depression. Although the notes from Dr. Hefner document that she had been prescribed Klonopin (clonazepam) since 2013, pharmacy records demonstrate that she did not pick up prescriptions for this medication.

The medical record supports impairment due to mental illness with difficulty maintaining a level mood, difficulty concentrating, and difficulty completing complex tasks on a sustained basis due to symptoms of depression and PTSD. These limitations were at a level that precluded the ability to perform work-related activities when the claimant stopped work on September 22, 2017. Impairment

**EXHIBIT A**

and limitations continued until February 28, 2018. After February 28, 2018, there is no information from provider's about her psychiatric symptoms and functioning.

In summary, the medical record supports impairment due to mental illness (symptoms of PTSD and depression) from September 22, 2017 through February 28, 2018 but not after that.

Our review of the additional information received on appeal does not offer any findings to alter the prior conclusion that your condition regarding neck pain, back pain, psoriatic arthritis, GERD, ADHD, hypothyroidism and acne for this LTD claim is pre-existing as defined by the Policy. Regarding your reported mental illness, the review concluded based on the medical documentation on file, you do not meet the definition of disability beyond February 28, 2018. Since your Long Term Disability benefit begin date is March 23, 2018, the decision to deny your claim has been maintained. Therefore, no benefits are payable.

## Conclusion

We conducted a thorough and independent review of Ms. Hull's entire claim. Having carefully considered Ms. Hull's LTD insurance coverage and the medical documentation contained in her claim, our position remains that her reported disability is pre-existing as defined by the Policy. The conditions of neck pain, back pain, psoriatic arthritis, GERD, ADHD, hypothyroidism and acne for which you claimed disability resulted from an injury or sickness for which you received treatment within 12 months prior to your effective date of coverage and your reported disability was caused by, contributed to by or resulted from these conditions and is excluded from coverage. In addition, we also had a medical review on your mental health conditions (symptoms of PTSD and depression) and it was indicated that no restrictions and limitations were supported beyond February 28, 2018. Therefore, no benefits are payable.

This claim decision reflects an evaluation of the claim facts and Policy provisions.

## Policy Provisions

The Policy contains the following exclusion and provisions regarding pre-existing conditions:

*"Disability" or "Disabled"*, with respect to Long Term Disability, means:
1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:
during the Elimination Period and until the Covered Person reaches the end of the Maximum Benefit Period, as a result of an Injury or Sickness, he is unable to perform the Material and Substantial Duties of his Own Occupation.
2. With respect to Covered Persons employed as pilots, co-pilots and crewmembers of an aircraft:
*"Disability" or "Disabled"* means as a result of Injury or Sickness the Covered Person is unable to perform the Material and Substantial Duties of Any Occupation.

*"Material and Substantial Duties"*, with respect to Long Term Disability, means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.

# EXHIBIT A

"*Own Occupation*", with respect to Long Term Disability, means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is normally performed in the national economy.

"*Proof*" means the evidence in support of a claim for benefits and includes, but is not limited to, the following:
1. a claim form completed and signed (or otherwise formally submitted) by the Covered Person claiming benefits;
2. an attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending Physician; and
3. the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits.
Proof must be submitted in a form or format satisfactory to Liberty.

### Disability Due to a Pre-Existing Condition

*Applicable to Long Term Disability Class 1:*
If an individual was insured under the prior carrier's policy at the time of transfer and was in Active Employment and insured under this policy on its effective date, benefits may be payable for a Disability due to a Pre-Existing Condition.

If the individual can satisfy this policy's Pre-Existing Condition Exclusion, the benefit will be determined according to this policy.

If the individual cannot satisfy this policy's Pre-Existing Condition Exclusion, then:
1. Liberty will apply the Pre-Existing Condition Exclusion of the prior carrier's policy and;
2. if the individual would have satisfied the prior carrier's pre-existing condition exclusion, giving consideration towards continuous time coverage under this policy; and the prior carrier's policy, the benefit will be determined according to this policy. However, the Maximum Monthly

Benefit amount payable under this policy shall not exceed the maximum monthly benefit payable under the prior carrier's policy.

No benefit will be paid if the individual cannot satisfy the Pre-Existing Condition Exclusions of either policy.

### Pre-Existing Condition Exclusion
This policy will not cover any Disability or Partial Disability:
1. which is caused or contributed to by, or results from, a Pre-Existing Condition; and
2. which begins in the first 12 months immediately after the Covered Person's effective date of coverage.

"*Pre-Existing Condition*" means a condition resulting from an Injury or Sickness for which the Covered Person is diagnosed or received Treatment within three months prior to the Covered Person's effective date of coverage.

EXHIBIT A

*"Treatment"* means consulting, receiving care or services provided by or under the direction of a Physician including diagnostic measures, being prescribed drugs and/or medicines, whether the Covered Person chooses to take them or not, and taking drugs and/or medicines.

Under the Employee Retirement Income Security Act (ERISA) appeal guidelines, Ms. Hull was entitled to appeal the decision made by Liberty Life Assurance Company of Boston (Liberty), and to submit any additional information she wished to be considered as part of the appeal. Liberty has conducted a full and fair review of her appeal and accompanying materials, and has concluded that the denial of benefits will be maintained.

At this time, Ms. Hull's administrative right to review has been exhausted; no further review will be conducted by Liberty and her claim will remain closed. You may request to receive, free of charge, copies of all documents relevant to your claim. You have the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

*The Cotiviti, LLC Group Disability Income Policy contains the below provision:*

*Legal Proceedings*
*A claimant or the claimant's authorized representative cannot start any legal action:*
*1. until 60 days after proof of claim has been given; nor*
*2. more than 1 year after the time proof of claim is required.*

If your plan is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency. In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under applicable law. Your employer's plan has a contractual limitations period of one year, which means that a lawsuit must be brought within one year after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is April 20, 2019e.

This information is provided for purposes of this claim only, as the time proof of claim is required may differ based on claim specifics and applicable policy language.

Nothing in this letter should be construed as a waiver of any Liberty Life Assurance Company of Boston rights and defenses under the above captioned Policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Decisions made by Liberty Life Assurance Company of Boston are based on the provisions outlined in Cotiviti, LLC Policy. These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities. No internal rules, guidelines, protocols, standard or other similar criteria were relied upon in rendering the claim determination.

If you require language translation assistance, please contact Liberty Life to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我们，我们会免费为您提供服务以便了解您的要求和诉求。

**EXHIBIT A**

Shá ata' hane'go shiká a'doowoł nínízingo saad hosiniłį́į́' dóó ná'óokąąh nínı́ áago naaltsoos nínı́łtsoozígíí hazhó'ó bik'idi' deeshtı́ı́ł nínízingo doo bą́ą́h ílínígóó níká a'doowoł éí biniiyé shił hódíílnih áko ákwe'égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If you have any questions regarding this matter, please contact me.

Sincerely,

Yasmine Toomasi
Appeal Review Consultant
Phone No.: (888) 437-7611 Ext. 16299
Secure Fax No.: (603) 334-3840

EXHIBIT A



DAVID L. NICHOLSON
JEFFERSON COUNTY CIRCUIT COURT CLE
LOUIS D. BRANDEIS HALL OF JUSTICE
600 WEST JEFFERSON STREET
LOUISVILLE, KENTUCKY 40202

7018 1130 0001 2742 1158

CERTIFIED MAIL

007.10

Lincoln Life Ass Co.
PO Box 7218
London, Ky 40742

**EXHIBIT A**